### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

**LARRY WAYNE JONES,**
**ADC #70147**                                                                                                        **PLAINTIFF**

**V.**                                        **CASE NO. 5:15-CV-00306 KGB/BD**

**WENDY KELLEY, et al.**                                                                                **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I**.        **Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge

Kristine G. Baker.  You may file written objections to this Recommendation.  If you file

objections, they must be specific and must include the factual or legal basis for your

objection.  Your objections must be received in the office of the United States District

Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Baker can adopt this Recommendation without

independently reviewing the record.  By not objecting, you may also waive any right to

appeal questions of fact.

**II.**        **Background**

Larry Wayne Jones is an Arkansas Department of Correction ("ADC') inmate who

was formerly housed at the Varner Supermax Unit.  Mr. Jones filed this lawsuit without

the help of a lawyer under 42 U.S.C. § 1983, alleging that the Defendants violated his

first and eighth amendment rights, as well as the Religious Land Use and Institutionalized

Persons Act ("RLUIPA").  Specifically, Mr. Jones complains that the ADC policy

requiring him to be clothed only in undershorts and flip-flops before receiving treatment by a physician or nurse practitioner violates his religious beliefs.

According to Mr. Jones, his beliefs forbid him from appearing before a female who is not his spouse in the limited clothing required by the policy.  Mr. Jones alleges that, because a significant number of medical personnel at the ADC are female, he has been unable to attend sick call, and his serious medical needs have been ignored.

All Defendants have moved for summary judgment.  (#62, #66)  Mr. Jones has responded to the motions, and the Defendants have replied.  (#75, #76, #77, #78, #79, #80, #81, #82, #83, #84)  For reasons explained below, the motions for summary judgment (#62, #66) should be GRANTED, and the case DISMISSED, with prejudice.

## III.   Discussion

### A.     Standard

Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no real dispute about the facts that are important to the outcome of the case.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

B.      Medical Defendants' Motion for Summary Judgment[1]

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This indifference extends to "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.*

A state official can be held liable for an eighth amendment violation, however, only if he "knows of and disregards a serious medical need or a substantial risk to an inmate's health or safety." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009).  To state a claim for deliberate indifference, Mr. Jones must allege not only that he suffered from an objectively serious medical need, but also "that [Defendants] actually knew of but deliberately disregarded his serious medical need." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014).  A medical condition is "objectively serious" if the prisoner was diagnosed by a doctor or the need for care is so obvious that a lay person would recognize the medical need. *Id.*

Mr. Jones must show "more than negligence, more even than gross negligence" to succeed on his deliberate-indifference claims. *Fourte v. Faulkner County, Ark.*, 746 F.3d

---

[1] To the extent that Mr. Jones asserts either First Amendment or RLUIPA claims against the Medical Defendants, those claims fail as a matter of law for reasons explained below.

384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

"Merely demonstrating that a prison doctor committed medical malpractice is insufficient

to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066

(8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Fourte*, 746 F.3d at

389). Stated another way, Defendants can be held liable only if their actions were "so

inappropriate as to evidence intentional maltreatment or a refusal to provide essential

care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v.

Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). See also *Allard v. Baldwin*, 779 F.3d 768,

771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show that

defendants' mental state was akin to criminal recklessness).

Here, Mr. Jones first complains that he suffers from left-shoulder pain. He

concedes that he underwent an x-ray examination of his left shoulder. (#64-2 at p.17)

That December 2015 x-ray revealed mild-degenerative joint disease of the left shoulder

with no fracture, separation, or dislocation. (#64-1 at p.103)

Mr. Jones also complains that he did not have an eye exam while he was housed at

the Varner Supermax Unit. He fears that he might suffer from glaucoma. The undisputed

evidence shows that, in October 2015, an optometrist determined that Mr. Jones did not

have glaucoma. (#64-1 at pp.101-102) Further, according to Mr. Jones's deposition

testimony, he now knows that he does not suffer from glaucoma. (#64-2 at p.19)

4

In August 2015, Mr. Jones began complaining about a lump in his neck. In December 2015, an ultrasound of Mr. Jones's neck was performed. (#64-1 at p.104) The ultrasound revealed normal results, and no mass was detected in Mr. Jones's neck. (*Id*.)

Finally, Mr. Jones complains that he suffers from hyperthyroidism, which causes him to be more sensitive to cooler temperatures. He alleges that Defendant Bland acted with deliberate indifference to his medical needs by failing to provide him an extra blanket in July of 2015. It is undisputed that Defendant Bland determined that an extra blanket for Mr. Jones was not medically indicated. (#64-1 at p.83) It is also undisputed, however, that during the relevant time, Mr. Jones had a number of garments and linens in his cell, including: a jumpsuit, thermal shirt, thermal pants, a towel, two bed sheets, and one wool blanket. (#64-2 at pp.25-26) Mr. Jones also admits that, despite the lack of a script, he did in fact have an extra blanket due to an "oversight," until he was transferred from Varner to the Tucker Maximum Security Unit. (#81 at p.8)

The Medical Defendants attach the affidavit of Dr. Robert Floss to their motion. (#64-3) Dr. Floss testified that the medical treatment provided to Mr. Jones at the Varner Unit was appropriate. (*Id*. at p.4) He also testified that Mr. Jones was provided adequate linens and garments to keep him sufficiently warm without an extra blanket. (*Id*. at p.3) Dr. Floss concluded that Mr. Jones did not have any emergent medical needs between September 1, 2014, and November 18, 2015, when he was transferred to Tucker. (*Id*. at p.2)

Dr. Floss further testified that there is no "CCS policy" requiring ADC inmates to be clothed only in boxer shorts and flip-flops while being escorted to sick call. (*Id.* at p.1) Dr. Floss explained that the policy at issue "is an ADC security policy." (*Id.*)

Mr. Jones has not come forward with any evidence to contradict either the medical records provided by the Medical Defendants or Dr. Floss's testimony. As a result, he has failed to create a genuine issue of material fact with regard to his claim that the Medical Defendants acted with deliberate indifference to his serious medical needs.

C.     ADC Defendants' Motion for Summary Judgment

1.     Sovereign Immunity

Mr. Jones's claims for money damages from the ADC Defendants in their official capacities are barred by sovereign immunity. Civil litigants cannot recover damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989).

2.     First Amendment Claim

Although inmates retain the right to practice their chosen religion while incarcerated, prison officials are not prohibited from imposing some regulations. To establish a First Amendment violation, Mr. Jones must first prove that the ADC regulation at issue infringed upon his sincerely held religious beliefs. *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996). Once he establishes an infringement, the burden shifts to the Defendants to show that the impinging regulation is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 ( 1987).

The *Turner* balance requires courts to weigh four factors: first, whether there is a "valid rational connection" between the regulation and the government interest the regulation promotes; second, whether there is an alternative means available for the inmate to exercise the right at issue; third, the effect that accommodating the inmate's right imposes on staff, other inmates, and prison resources generally; and fourth, whether there is an alternative that fully accommodates the claimant "at de minimus cost to valid penological interests." *Id*. at 89–91.

Here, it is undisputed that Mr. Jones is a nondenominational Christian. The ADC Defendants argue, however, that Mr. Jones has no sincerely held religious belief that prohibits him from being seen clothed in undershorts by female personnel. In support, Defendants offer excerpts from Mr. Jones's deposition testimony, as well as his medical records.

Mr. Jones has failed to present evidence that appearing in undershorts and flip-flops in front of female professionals violates a tenet of his faith or impedes his ability to fulfill his religious obligations. While he argues that his beliefs are supported in various books of the Bible, he does not rely on a specific scripture. Instead, he states that his religion prohibits him from being "seen in any manner that promotes 'sexual lust.'" (#80 at p.10) Such a state of undress, he believes, "would place [him] in serous danger of eternal damnation." (#81 at p.2)

In his deposition testimony, Mr. Jones was asked whether he relied on any particular scripture to support this belief. He replied: "There is not a particular one, but

there are issues – there are things that Paul said, you know, said in the Bible about sexual

immorality and participating in things that lead to it or promote it, that type of thing."

(#64-2 at pp.43-44)  Mr. Jones went on to suggest that there are "sexual immorality

issues" set out in Romans and Corinthians, a well as in the Old Testament.  (#64 at p.44)

Prison policies are deemed to substantially burden an inmate's rights if they,

"significantly inhibit or constrain conduct or expression that manifests some central tenet

of a person's individual religious beliefs; must meaningfully curtail a person's ability to

express adherence to his or her faith; or must deny a person reasonable opportunities to

engage in those activities that are fundamental to a person's religion."  *Patel v. U.S.*

*Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); *Murphy v. Mo. Dept. of Corr.*, 372

F.3d 979, 988 (8th Cir. 2004).

Here, Mr. Jones admits that he has been provided the opportunity to engage in

activities that are fundamental to his religion.  He testified that, while housed at the

Varner Unit, he was allowed to grow a beard, keep a vegan diet, and possess a Bible in

his cell.  (#66-2 at pp.32-35)

Furthermore, Mr. Jones has not explained exactly what state of dress his beliefs

require for appearing before female medical personnel; nor has he presented any evidence

suggesting that appearing in his underwear actually promotes sexual lust among medical

providers.  In his deposition, Mr. Jones admitted that he has allowed females to touch him

and see him in a state of undress for specific medical procedures as long as it is not

"sexually related."[2]  (#66-2 at p.9)  In addition, he testified that female guards were assigned to work his cell bock at the Varner Unit for a significant amount of time and that these guards had the potential to see him in a state of undress at times, such as shower call.  (#66-2 at pp.11, 30, 40-41)  Mr. Jones testified that he could "tolerate" that possibility.  (#80 at p.6)

According to Mr. Jones's medical records, Mr. Jones attended sick call on September 26, 2014, and October 21, 2014, after the policy at issue was implemented. (#77 at p.11; #80 at p.7)

Although Mr. Jones contends that he has held this sincerely held belief since the 1990s, he did not object when a female nurses examined his left and right groin for complaints of boils in 2006; and he did not object when two female nurses assisted in the rectal exam that he underwent in June 2007.[3]  (#77 at pp.13-14; #80 at p.8)

Mr. Jones also admits that, since the policy was implemented in 2004, he never sought a religious accommodation from the Varner chaplain to attend sick call in additional clothing.[4]  (#77 at p.11; #80 at p.5)

---

[2] Mr. Jones also admitted that a female nurse has attached leads for a past EKG. (#66-2 at pp.9-10)

[3] In response to the Defendants' motions for summary judgment, Mr. Jones admits that he has failed to adhere to this belief on several occasions.  (#76 at p.3)  He states, however, that, "since January 2015, [he] has steadfastly adhered to [his] beliefs." (#81 at p.2)

[4] In response to the ADC Defendants' motion, Mr. Jones contends that he did not seek a religious accommodation for this belief because "ADC Defendants made it perfectly clear from the very start that there were 'No Exceptions, Period' to the sick call

Based on this undisputed evidence, the Court cannot conclude that Mr. Jones had a sincerely held religious belief that was substantially burdened by the policy at issue.[5]

3.      RLUIPA Claim

Mr. Jones also claims that the ADC Defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1.  The ADC Defendants contend that Mr. Jones's RLUIPA claim became moot after he was transferred to the Maximum Security Unit of the ADC.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an inmate unless the government demonstrates that the imposition of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a)(1)–(2) ("Section 3"); see *Van Wyhe v. Reisch*, 581 F.3d 639, 654 (8th Cir. 2009) (explaining that RLUIPA "prohibits substantial burdens on religious exercise, without regard to discriminatory intent").

_____

dress code."  (#80 at p.5)

[5]  The Court notes that, even if the policy at issue substantially burdened Mr. Jones's sincerely held religious beliefs, the policy is reasonably related to a legitimate penological interest.  The policy was enacted following an incident in which an inmate was able to hide a homemade shank in his clothing while being transferred to sick call. (#66-2 at pp.21-25) He then used the hidden weapon to stab the guard who was transferring him.  In his deposition, Mr. Jones acknowledged that the policy was implemented for safety and security reasons.  (#66-2 at p.43)

RLUIPA does not permit a plaintiff to recover money damages against prison officials in their individual capacities.  *Van Wyhe,* 581 F.3d at 655.  Therefore, Mr. Jones may pursue only injunctive relief against the ADC Defendants in his RLUIPA claims.  In his Complaint, Mr. Jones requested that the Court "[i]ssue a permanent injunction requiring Defendants to implement an alternative to the VSM sick call dress code to accommodate [his] need for medical care without violating [his] religious beliefs."  (#2 at p.16)

It is undisputed that Mr. Jones was transferred to the Maximum Security Unit of the ADC on November 18, 2015.  (#76 at p.3)  The policy at issue is specific to the Varner Unit of the ADC.  As a result, Mr. Jones is no longer subject to the sick-call policy.  The Eighth Circuit Court of Appeals has squarely held that "there is no live case or controversy" when an inmate is no longer subject to the policy he challenges.  *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012).  Although Mr. Jones argues that he could be transferred back to the Varner Unit at some future date, that belief is purely speculative.  Besides his conclusory allegations, he has not made any showing that a transfer back to the Varner Unit is likely.  *Id.*

Further, although Mr. Jones claims that the sick-call policy at the Maximum Security Unit is "virtually identical" to that at the Varner Unit, his allegation that there is a "reasonable expectation that his RLUIPA rights will be violated," is insufficient to prohibit judgment as a matter of law in this case.  (#79 at p.18)  Mr. Jones specifically requested injunctive relief regarding the sick-call policy at the Varner Unit.  The Court

should not "liberally construe[]" his request for injunctive relief.  (#76 at p.24)  Mr. Jones

has failed to create any genuine issue of material fact on this claim.[6]

      4.      Deliberate-Indifference Claim

Mr. Jones claims that the ADC Defendants also acted with deliberate indifference

to his serious medical needs.  The ADC Defendants rely on the evidence presented by the

Medical Defendants in support of their motion for summary judgment and argue that they

are entitled to a dismissal of this claim for the same reasons presented by the Medical

Defendants.

Because Mr. Jones has failed to come forward with any evidence to contradict the

evidence presented by the Medical Defendants in support of their motion for summary

judgment, the ADC Defendants also are entitled to judgment as a matter of law on Mr.

Jones's deliberate-indifference claim.

## IV.   **Conclusion**

---

     [6] Mr. Jones cannot pursue claims that officials at the Maximum Security Unit
violated his constitutional rights in this lawsuit because he could not have fully exhausted
those claim prior to filing this lawsuit.  If he seeks to pursue any such claims, he must do
so in a new lawsuit.

The Court recommends that the motions for summary judgment (#62, #66) be GRANTED.[7]  Mr. Jones's claims should be DISMISSED, with prejudice.  Mr. Jones's motion for reconsideration (#56) should be DENIED, as moot.[8]

DATED this 14th day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7]  In their motion, the ADC Defendants also argue that they are entitled to qualified immunity on Mr. Jones's claims against them.  Because Mr. Jones's constitutional claims fail as a matter of law, it is not necessary to discuss this argument.

[8]  Because Mr. Jones should not be allowed to move forward on his federal claims, the Court should decline to exercise supplemental jurisdiction over his state-law claim brought under the Arkansas Medical Malpractice Act.